U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

'09 DEC 17 P4 :16

JON W. SANFILIPPO
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

KALOTI WHOLESALE, INC. d/b/a
KALOTI ENTERPRISES,

                Plaintiff,

vs.

Case No. 09 – C – 1156

UNITED STATES OF AMERICA,
ERIC HOLDER, Attorney General of the
United States, the DEPARTMENT OF JUSTICE,
as"Lead Agency," pursuant to
28 C.F.R. §14.2(b)(2), representing the
FEDERAL BUREAU OF INVESTIGATION,
UNITED STATES MARSHAL SERVICE,
INTERNAL REVENUE SERVICE AND
BUREAU OF ALCOHOL, TOBACCO
AND FIREARMS and the UNITED STATES
ATTORNEY'S OFFICE for the EASTERN
DISTRICT OF WISCONSIN, and
UNKNOWN AGENTS OF THE ABOVE
FEDERAL AGENCIES,

                Defendants.

---

## COMPLAINT FOR DAMAGES UNDER FEDERAL TORT CLAIMS ACT
## AND *BIVENS* CLAIMS FOR VIOLATION OF CONSTITUTIONAL RIGHTS

---

Plaintiff Kaloti Wholesale, Inc., d/b/a Kaloti Enterprises (Kaloti) by and

through its attorneys, Gimbel, Reilly, Guerin, Brown LLP, of Milwaukee,

Wisconsin, now comes before this court and complains of the United States government defendants (government) as follows:

## NATURE OF ACTION

This is a civil action to recover monetary damages for the willful and wrongful seizure, detention, spoliation and destruction of property owned by the plaintiff Kaloti, to wit: perishable food product consisting of over 81,000 cans of powdered baby formula, by agents and agencies of the United States government; and for the government's continued refusal to return the bulk of the seized food product, and the government's refusal to allow the food product to be tested to address the government's purported safety concerns, despite repeated requests by Kaloti and its secured creditor, Wells Fargo Bank. Such continued refusal without good cause, whether willful or negligent, to allow any testing whatsoever and the possible orderly liquidation of the seized property, so as to preserve its value, resulted in the complete spoliation and destruction of the food product. The government's actions caused considerable monetary damages to Kaloti, for the value of the lost product (purchase costs and potential sale value and profit), disruption of Kaloti's credit relationship with its secured lender and extra interest that had to be paid, disruption of Kaloti's business relationship with its customers and other wholesalers and distributors, substantial legal fees and costs incurred by Kaloti in its attempt to obtain return

of the seized property, so it could be sold before it expired, and other damages as alleged herein and which will be proven.

Kaloti further alleges, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), that the defendant government agencies and their officers, agents and employees, acting in their official and individual capacities, were involved in intentional conduct, and reckless and/or conscious disregard or deliberate indifference for the constitutional rights of Kaloti under the United States Constitution and the laws of the United States. Such actions violated Kaloti's constitutional rights granted under the First, Fourth, and Fifth Amendments to the Constitution, which deprivation caused substantial monetary damages to Kaloti, loss of business and tarnishing of Kaloti's reputation in the community.

## JURISDICTION, VENUE AND CONDITIONS PRECEDENT

1.      Kaloti Wholesale, Inc. d/b/a Kaloti Enterprises (Kaloti), is a Wisconsin corporation, which is involved in the wholesale grocery distribution business. Its main office and warehouse is located at 5475 South Westridge Court, New Berlin, Wisconsin, which is in the Eastern District of Wisconsin.

2.      The Federal Bureau of Investigation is an agency of the United States Government. Its main address is located at 330 East Kilbourn Avenue, Milwaukee, Wisconsin 53202.

3.      The Hon. Eric Holder is the Attorney General of the United States, in charge of the United States Department of Justice and the United States Attorney's Office in the Eastern District of Wisconsin, which are agencies of the United States Government. The Department of Justice's and U. S. Attorney's main office is located in Wisconsin is at 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. The Department of Justice has determined that it is acting as the lead agency for the named defendants in the Kaloti's tort claims.

4.      The Bureau of Alcohol, Tobacco & Firearms is an agency of the United States Government. Its main office is located at 1000 North Water Street, Suite 1710, Milwaukee, Wisconsin 53202.

5.      The United States Marshall Service is an agency of the United States Government. Its main office is located at 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202.

6.      The Internal Revenue Services is an agency of the United States Government. Its main office is located at 211 West Wisconsin Avenue, Milwaukee, Wisconsin 53203.

7.      The claims herein are brought against the United States government defendants pursuant to the Federal Tort Claims Act, 28 U.S.C. sections 2671, *et seq.*, and 28 U.S.C. section 1346(b)(1), for money damages as compensation for loss of property, consequential monetary damages, lost business profits and

goodwill and attorney fees and expenses, which were caused by the willful and/or negligent and wrongful acts and omissions of employees of the United States government, while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to Kaloti in accordance with the laws of the State of Wisconsin.

8.     Venue in the Eastern District of Wisconsin is proper under 28 U.S.C. section 1402(b), in that Kaloti resides in that District and all, or a substantial part, of the acts and omissions forming the basis of Kaloti's claims occurred in the Eastern District of Wisconsin.

9.     Kaloti has fully complied with the provisions of 28 U.S.C. section 2675 by timely presenting claims under the Federal Tort Claims Act to the defendant government agencies and serving such upon them in 2009. The United States Department of Justice subsequently assumed responsibility for considering and deciding upon Kaloti's claims against all of the government defendants as the lead agency to investigate and decide the merits of the claim, pursuant to 28 C.F.R. section 14.2(b)(2).

10.     This lawsuit has been timely filed following the letter decision of the 14.2(b)(2) lead agency, the United States Department of Justice, denying all of Kaloti's claims against all of the federal government agencies complained to, all of which constitute the named government defendants in this lawsuit.

11.     Kaloti also brings claims for deprivation of its constitutional rights by federal officers, agents, employees and their respective agencies, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## ACTIONS AND EVENTS FORMING THE BASIS OF THE CLAIMS

12.     During the time period of February 14 and 16, 2007, unknown agents from the Federal Bureau of Investigation and other defendant federal agencies executed search warrants at Kaloti's warehouse and office, and seized over 81,000 cans of perishable powdered infant formula, which Kaloti had purchased in the primary and secondary interstate market for approximately $800,000, along with business records and equipment.

13.     The execution of the federal search warrants was precipitated by an *ex parte* search order issued by a federal court in New York in a civil trademark case relating to alleged counterfeit condoms, none of which were found to be in the Kaloti's warehouse. The civil case search and seizure order was executed at approximately the same time as the federal search warrants.

14.     In addition to unknown agents of the United States Marshal Service and Federal Bureau of Investigation being present and involved in the February 2007 entries, searches and seizures at the Kaloti's place of business, other unknown agents of the defendant federal agencies are believed to have been

present and involved in the process, along with unknown private persons representing or acting on behalf of food industry manufacturers, who have an economic interest in sharply limiting or eliminating the secondary market of food product wholesalers and distributors.

15.     Kaloti is engaged in interstate commerce and had purchased the seized infant formula from various primary and secondary market sources that it had done business with in the past.   Such purchases were made in good faith and in the usual and ordinary course of business.

16.     Beginning in March 2007, Kaloti and its retained legal counsel met, spoke with and corresponded on many occasions with the investigating government agents and representatives of the United States Attorney's office in Milwaukee requesting return of the seized food product.

17.     The ostensible reason given by the government to Kaloti and its counsel for the seizure and continued detention of the powdered infant formula was that the government believed the product had been stolen, and until the sources of the purchases had been identified, it was presumed to be stolen and was also needed as evidence.

18.     During March and April 2007, Kaloti representatives and its counsel met with and answered all of the Government's questions as to the sources of the seized formula, provided documentation showing proof of purchase, and

corporate practices, and purchasing and accounting procedures. Kaloti maintains a computer accounting system used to track and maintain its inventory, including the source, purchase information and status of merchandise. Kaloti generated an inventory list for the seized property with all of the information requested by the government, including all open and current infant formula invoices, which Kaloti provided to the government investigators. During these meetings and exchanges, Kaloti's counsel repeatedly requested the return of the non-expired, perishable powdered infant formula.

19.   In late April 2007, the government partially granted these requests and returned to Kaloti approximately $57,000 of the approximately $800,000 worth of powdered infant formula that had been seized. The infant formula cans returned had been purchased by Kaloti in the primary market from the manufacturer, Nestle.

20.   The government took the position that all the other cans of powdered infant formula seized and detained, which had been purchased by Kaloti on the secondary market from non-manufacturers, wholesalers, distributors and jobbers were deemed to be of questionable origin because of that fact, and therefore the seized product was presumed to be stolen and would not be returned to Kaloti.

21.     Despite Kaloti's and its counsels' numerous requests to the government since that time for proof that any of the remaining 80,000 cans of infant formula that had been seized and were being detained were stolen, no such proof has ever been provided.

22.     Kaloti filed a petition for hardship return of the seized infant formula in the Eastern District of Wisconsin, under 18 U.S.C. section 983(f), the Civil Asset Forfeiture Reform Act (CAFRA). *In re Seizure of Infant Formula from Kaloti Enterprises, Inc.*, Case No. 07-C-552.

23.     The government obtained a federal seizure warrant on June 1, 2007 for the seized infant formula, and filed an *in rem* forfeiture complaint against the seized formula in the Eastern District of Wisconsin on June 20, 2007. *United States v. Approximately 81,454 Cans of Baby Formula*, Case No. 07-C-565.

24.     Kaloti and its secured lender Wells Fargo Bank filed answers to the government's forfeiture action on July 31, 2007, and Wells Fargo filed a motion to intervene and petition for declaratory relief.

25.     Following Kaloti's filing its CAFRA petition for hardship release, the government's rationale for continued detention of the seized infant formula expanded to include purported concerns for the safety and viability of the food product, in addition to the government's presumption that it was stolen because

it was purchased in the secondary market, rather than directly from a manufacturer.

26. Kaloti and its counsel, as well as the bank's counsel, thereafter requested that the government conduct forensic testing of a representative sampling of the seized infant formula, or allow Kaloti at its own expense to obtain access to a sampling of the seized cans and obtain such food safety testing from an independent qualified laboratory, in order to definitively and scientifically determine whether or not there was any merit to and proof of the government's proferred food safety concerns.

27. The government refused to conduct such testing and refused to release a representative sampling of the seized infant formula for private testing, taking the position that even if one can was tainted, none of the seized food product should be released. The government never even tested one can of the infant formula seized from Kaloti but relied on conjecture and inference that some of the cans might be tainted, so none would be released, even to test the viability of the government's presumptive conjecture.

28. The District Court granted the bank's motion to intervene in the *in rem* forfeiture case, but ultimately denied Kaloti's hardship petition for release of the seized food product and Wells Fargo's request for declaratory relief on December 6, 2007.

29.     The District Court subsequently conducted evidentiary hearings in April and May, 2008 related to Kaloti's and the bank's request that an interlocutory sale of the seized food product be ordered before it all expired and was rendered completely valueless.

30.     The issue of testing came up in the District Court proceedings in the Fall of 2007, as well during the Spring 2008 evidentiary hearings. The government presented no scientific evidence or test results that any of the seized cans were actually tainted and thus posed a significant food safety concern.

31.     During the Spring 2008 hearings, the government witnesses testified that one can of formula seized in February 2007 had the wrong label on it. Despite one of the government witnesses conceding that a representative sampling of the cans could be tested to make a product safety determination, the government remained steadfast in its opposition to any testing  and obtaining direct scientific proof from a representative sample that the purported food safety concerns were borne out by more than conjecture and inference. The government also continued to resist Kaloti's repeated offers to conduct a complete inventory and comparison of all of the seized cans, at its expense, to determine if any other cans were improperly labeled.

32.     On June 2, 2008, District Judge Lynn Adelman issued a decision and order rejecting "with some reluctance", Kaloti's and the bank's request for an

interlocutory sale of the seized property pursuant to the court's power under Rule G of the Supplemental Rules for Admiralty or Maritime claims and Asset Forfeiture Actions. Judge Adelman's decision noted that while the government's safety concerns and the testimony of its witnesses were somewhat speculative, because there was some possible, but unproven, risk of harm, "that risk outweighs the potential benefit of a sale".

33.   Kaloti thereafter appealed Judge Adelman's decision to the United States Court of Appeals for the Seventh Circuit.

34.   During oral argument before the Seventh Circuit on Kaloti's appeal, some of the judges expressed concern about the lack of testing and direct proof that the seized food product was actually unsafe and inquired if a federal tort claim could be filed regarding the spoilage of the detained property.

35.   The Seventh Circuit denied Kaloti's appeal on March 25, 2009, finding that the District Court had not abused its discretion in denying the request for an interlocutory sale under Rule G. *United States v. Approximately 81,454 Cans of Baby Formula, Appeal of Kaloti Wholesale, Inc.*, Appeal No. 08-2637.

36.   The Seventh Circuit decision recognized that if testing had been conducted, as Kaloti and its secured creditor repeatedly requested (along with a complete survey and comparison of all the cans and their labels) and " if none of the cans in the inspected sample turned out to be a danger this would be strong

statistical evidence that the mislabeled can found by the government was the only one in the entire lot." Nonetheless, the Court of Appeals could not find that Judge Adelman had abused his discretion "in insisting that even a very slight danger was reason enough to bar the sale."

37. The government's position refusing to test any of the cans itself, or to allow private food safety testing of a representative sampling of the seized cans, and its refusal to allow a complete survey and comparison of all the seized cans to determine if they were correctly labeled, which can be readily determined because the product manufacturer and product type itself is embossed on the bottom of each can, in addition to the paper label on the side of the can, was unreasonable and inconsistent with how other food product safety issues are dealt with, e.g., massive testing immediately conducted by the FDA and other government agencies, as well as by private concerns, in the California spinach and tomato scares of the past two years.

38. The government's across-the-board presumption that food product like powdered infant formula, that is purchased on the secondary market, rather than directly from a manufacturer, is *per se* stolen or unsafe for consumption is not based on any rational scientific or evidentiary basis, but is only on conjecture and inference.

39.     The government never presented any direct proof that the seized powdered infant formula was stolen, not even one can.  The government never presented any direct proof that the seized infant formula constituted contraband, was evidence of a violation of the law, was used in illegal activities or was unsafe for human consumption.

40.     Kaloti's statutory and constitutional procedural due process rights to a return of seized property were completely frustrated and violated by the government's refusal to allow any testing of the seized food product to determine food quality or any survey and comparison to verify that the cans were properly labeled.

41.     By so doing, the government defendants exceeded their power and authority to regulate and control interstate commerce under the Commerce Clause, Article I, Section 8, Clause 3 of the United States Constitution.  The Commerce Clause states that Congress has the power to regulate commerce among the states.  However, such regulation, whether pursuant to a specific statute or at the discretion of government agents, must be based on rational reasons, and if discriminatory against a class of products or businesses, must be based on more than mere speculation. *Granholm v. Heald*, 544 U.S. 460, 472 (2005).

42.     Laws and government enforcement efforts that discriminate against interstate commerce, here the purchase of infant formula by Kaloti in the secondary market, face a virtually *per se* rule of invalidity. *Granholm*, at 476, citing *Philadelphia* v. *New Jersey*, 437 U.S. 617, 624 (1978). The Supreme Court's Commerce Clause cases demand more than mere speculation to support discrimination against out-of-state goods like the infant formula Kaloti purchased.

43.     The purchase from manufacturers-only preference that the government defendants imposed and applied to Kaloti, unreasonably discriminates against Kaloti and other wholesalers, distributors and jobbers in the secondary market, in violation of the Commerce Clause, and equal protection and due process components of the Fifth Amendment. The burden is on the government to show that such discrimination is demonstrably justified. *Granholm*, at 496, citing *Chemical Waste Management, Inc.* v. *Hunt*, 504 U.S. 334, 344 (1992).

44.     The discrimination against Kaloti, and wholesalers and distributors similarly situated who buy and sell in the secondary food product market, exempting food product from continued detention until it spoils only if it is shown to have been purchased directly from manufacturers, violates Kaloti's freedom of commercial speech, association and right to engage in lawful

economic activities protected under the First Amendment of the Constitution. The First Amendment protects commercial speech and association and rejects the highly paternalistic view that government has the complete power to suppress commercial speech, association and legitimate business activity. *Central Hudson Gas & Electric v. PSC*, 447 U.S. 557, 561-562 (1980). The Supreme Court recognized in *Central Hudson* that the government can regulate commercial speech only in a manner that is "not more extensive than necessary" to serve a substantial government interest. *Id.*, 447 U.S. at 571.

45.     The government finding that one can out of 81,000 cans was not correctly labeled, months after the initial search and seizure, does not establish sufficient probable cause to believe that all of the seized food product was stolen or that it was somehow unsafe or unfit for human consumption.  Conjecture, suspicion and inference are no substitute for an actual survey and label comparison and for actual testing of the food product seized, yet that is the position the government has consistently taken towards Kaloti since February 2007.  As such, the continued seizure and detention which resulted in the complete destruction of Kaloti's property was unreasonable and violated Kaloti's constitutional rights under the Fourth Amendment and the due process provisions of the Fifth Amendment.

46. Such a piling of inference upon inference in this manner unjustifiably expands the government's police powers allowing for seizure, detention and forfeiture of property, and is contrary to and in excess of the powers granted to the federal defendants under the Commerce Clause of the United States Contitution. *United States v. Lopez*, 514 U.S. 549, 567 (1995).

47. After seizing Kaloti's property and detaining it, the government placed Kaloti in an untenable position in which there would be no way the seized food product would ever be returned. Kaloti had to prove that the infant formula was unsafe and not mislabeled, but the government refused to do so itself and it refused to allow Kaloti or an independent third party access to the infant formula so as to conduct food safety testing and label comparison and verification. This violated Kaloti's rights to procedural due process and equal protection under the Fifth Amendment.

48. The government defendants' continued refusal to allow testing or a survey and comparison of the labels on the seized cans of infant formula resulted in the complete spoliation of the seized food product and loss of its entire value. This constitutes an unconstitutional taking of Kaloti's property, without just compensation or due process under the Fifth Amendment.

49. Such continued refusal, whether willful or negligent, to allow any testing whatsoever, and the refusal to allow any comparison for label

verification, which could have resulted in an orderly liquidation of the seized property, so as to preserve its value, resulted in the complete spoliation and destruction of the food product. The government defendants' actions caused considerable monetary damages to Kaloti, as outlined in its tort claim, for the value of the lost product (purchase costs and potential sale value and profit), disruption of Kaloti's credit relationship with its secured lender and extra interest that had to be paid, disruption of Kaloti's business relationship with its customers and other wholesalers and distributors, substantial legal fees and costs incurred by Kaloti in its attempt to obtain return of the seized property, so it could be sold before it expired, and diminution of credit rating and its reputation in the community.

50.     The actions of the defendant government agencies and their officers, agents and employees, acting in their official and individual capacities, constituted intentional conduct, in reckless and/or conscious disregard or deliberate indifference for the aforementioned constitutional rights of Kaloti under the United States Constitution and the laws of the United States. The government defendants' actions violated Kaloti's constitutional rights granted under the First, Fourth, and Fifth Amendments to the Constitution.

## FIRST CLAIM – VIOLATION OF 28 U.S.C. SECTION 2680

51.     Kaloti incorporates by reference herein all allegations set forth in paragraph nos. 1 through 50 above.

52.     The acts and events set forth above constitute negligent or willful and wrongful conduct by the defendants, which includes the continued detention, loss and destruction of personal and business property of Kaloti, denial of due process and equal protection of the laws, interference with Kaloti's business relationship with its secured creditor, loss of business profits, diminution of Kaloti's credit rating and damage to Kaloti's reputation in the business community, all of which are actionable under the laws of the State of Wisconsin. Because the acts and events were undertaken and caused by agents and agencies of the United States of America, the United States is liable for all damages caused by such acts, as provided by 28 U.S.C. section 2680(h).

## SECOND CLAIM – VIOLATION OF FIRST AMENDMENT RIGHTS

53.     Kaloti incorporates by reference herein all allegations set forth in paragraph nos. 1 through 52 above.

54.     The acts and events set forth above constitute a violation of Kaloti's rights to free speech, freedom to engage in economic activity and interstate commerce, and freedom of association, all of which are guaranteed and protected by the First Amendment of the United States Constitution. Because the acts and

events complained of above were undertaken by the defendant government agencies and their officers, agents and employees, acting in their official and individual capacities, and were done intentionally, and/or with reckless or conscious disregard or deliberate indifference for the constitutional rights of Kaloti, the defendant agents and the United States are liable for all damages caused by such acts and violation of constitutional rights.

## THIRD CLAIM - VIOLATION OF FOURTH AMENDMENT RIGHTS

55. Kaloti incorporates by reference herein all allegations set forth in paragraph nos. 1 through 54 above.

56. The acts and events set forth above constitute a violation of Kaloti's rights to be free from unreasonable searches, seizures and detentions of its property, particularly when such detentions lead to the needless and complete destruction of the seized property, which rights are protected and guaranteed by the Fourth Amendment of the United States Constitution. Because the acts and events complained of above were undertaken by the defendant government agencies and their officers, agents and employees, acting in their official and individual capacities, and were done intentionally, and/or with reckless or conscious disregard or deliberate indifference for the constitutional rights of Kaloti, the defendant agents and the United States are liable for all damages caused by such acts and violation of constitutional rights.

## FOURTH CLAIM – VIOLATION OF FIFTH AMENDMENT RIGHTS

57. Kaloti incorporates by reference herein all allegations set forth in paragraph nos. 1 through 56 above.

58. The acts and events set forth above constitute a violation of Kaloti's rights to due process and equal protection of the laws and to just compensation for its property that was seized and allowed to be completely spoiled and destroyed by the government, which rights are protected and guaranteed by the Fifth Amendment of the United States Constitution. Because the acts and events complained of above were undertaken by the defendant government agencies and their officers, agents and employees, acting in their official and individual capacities, and were done intentionally, and/or with reckless or conscious disregard or deliberate indifference for the constitutional rights of Kaloti, the defendant agents and the United States are liable for all damages caused by such acts and violation of constitutional rights.

## FIFTH CLAIM – VIOLATION OF COMMERCE CLAUSE AND RIGHT TO ENGAGE IN INTERSTATE COMMERCE WITHOUT DISCRIMINATORY INTERFERENCE OR REGULATION

59. Kaloti incorporates by reference herein all allegations set forth in paragraph nos. 1 through 58 above.

60.     The acts and events set forth above constitute a violation of Kaloti's

rights to engage in interstate commerce, particularly in the secondary food

product market, without unreasonable government interference and without

discrimination or preference for purchases from primary manufacturers only,

which rights are protected by the Commerce Clause, Article I, Section 8, Clause 3

of the United States Constitution and by the Fifth Amendment thereto. Because

the acts and events complained of above were undertaken by the defendant

government agencies and their officers, agents and employees, acting in their

official and individual capacities, and were done intentionally, and/or with

reckless or conscious disregard or deliberate indifference for the constitutional

rights of Kaloti, the defendant agents and the United States are liable for all

damages caused by such acts and violation of constitutional rights.

## DAMAGES

1.     Kaloti has suffered the following injuries for which it has filed

federal tort claims and for which it seeks full compensation under the law:

| | |
|---|---|
| Cost of inventory seized | $ 755,963.75 |
| Legal fees incurred by claimant for its attorneys and secured creditor's | $ 375,580.52 |
| Costs and extra fees paid to secured creditor Wells Fargo Bank due to seizure of collateral | $ 67,739.43 |

|                                                          |                    |
| -------------------------------------------------------- | ------------------ |
| Interest paid to secured creditor due to seizure of collateral | $ 208,834.87 |
| Margin lost and lost sales and profit from the seized formula that is now unsaleable | $ 948,822.86 |
| TOTAL DAMAGES | $2,356,941.43 |

2.      Kaloti reserves the right to supplement its damage claim figure to include interest and to seek additional costs, attorneys' fees incurred subsequent to the filing of its federal tort claims, attorneys' fees and costs yet to be incurred in this litigation in seeking recovery for its damages, both under the Federal Tort Claims Act, 28 U.S.C. sections 1346 and 2671 *et seq.*, and which may be allowable as a result of its *Bivens* action, pursuant to 42 U.S.C. section 1988 and under the Equal Access to Justice Act, 5 U.S.C. section 504.

## PRAYER FOR RELIEF

WHEREFORE, Kaloti seeks an award of monetary damages against the United States of America and judgment against it, in the damage amounts noted in its federal tort claims plus such other amounts as may be determined and awarded in its *Bivens* constitutional claims, in an amount to be determined at

trial, plus its costs, disbursements and actual attorneys' fees, and any further

relief that the court deems just and equitable.

*PLAINTIFF HEREBY DEMANDS A TWELVE-PERSON JURY*

Dated this 17 day of December, 2009.

Respectfully submitted,

GIMBEL, REILLY, GUERIN & BROWN LLP

By:

RAYMOND M. DALL'OSTO
State Bar No. 1017569
D. MICHAEL GUERIN
State Bar No. 1010343
Attorneys for Plaintiff

POST OFFICE ADDRESS:

Two Plaza East, Suite 1170
330 East Kilbourn Avenue
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440
*Crimkalotifedtortbivenscomp3rev*